T.C. Memo. 2018-59

UNITED STATES TAX COURT

DERRINGER TRADING, LLC, JETSTREAM BUSINESS LIMITED, TAX
MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL
REVENUE, Respondent

MARLIN TRADING, LLC, JETSTREAM BUSINESS LIMITED, TAX
MATTERS PARTNER, Petitioner v. COMMISSIONER OF INTERNAL
REVENUE, Respondent

Docket Nos. 20872-07, 6268-08.[1]        Filed May 3, 2018.

John E. Rogers, for petitioner Jetstream Business Limited in docket Nos.

20872-07 and 6268-08.

Michael D. Hartigan (an officer), as an affected participating individual for

participating partner Leila Verde Fund, LLC, in docket No. 20872-07 and for

participating partner Monticello Shrub Fund, LLC, in docket No. 6268-08.

_____

[1]These cases were consolidated by order issued February 1, 2016, for
purposes of trial, briefing, and opinion.

[*2]   David A. Lee, Elizabeth Y. Ireland, and Daniel M. Trevino, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GOEKE, Judge:[2]   These cases concern two petitions for adjustment of partnership items under section 6226.[3]   They involve two partnerships, their partners, and investors in essentially "cookie cutter" distressed asset debt (DAD) tax shelter investments similar to those addressed in Superior Trading, LLC v. Commissioner, 137 T.C. 70 (2011), supplemented by T.C. Memo. 2012-110, aff'd, 728 F.3d 676 (7th Cir. 2013), and Kenna Trading, LLC v. Commissioner, 143 T.C. 322 (2014).   The Internal Revenue Service (IRS) issued a notice of final partnership administrative adjustment (FPAA) to Jetstream Business Ltd. (Jetstream), as tax matters partner of Derringer Trading, LLC (Derringer), on July 25, 2007, for 2003 and 2004 and to Jetstream, as tax matters partner of Marlin

---

[2]These cases were assigned to Judge Robert A. Wherry, Jr., who retired from judicial service on January 1, 2018.  With the parties' agreement, the cases were reassigned to Judge Joseph R. Goeke for the purpose of rendering an opinion.

[3]Unless otherwise indicated all section references are to the Internal Revenue Code of 1986 as amended and in effect for the tax years at issue, and all Rule references unless otherwise stated are to the Tax Court Rule of Practice and Procedure.

[*3] Trading, LLC (Marlin), on March 7, 2008, for 2004.  Petitioner filed timely

petitions in both cases with this Court.  Each partnership's principal place of

business was in Illinois when the petitions were filed.

On December 28, 2016, the Court filed respondent's motion for summary

judgment in both of these cases.  After considering these motions and petitioner's

responses in opposition to the motions, the Court in Derringer at docket No.

20872-07 granted summary judgment on all issues, except the section 6662

penalty issues and the amortization and deduction issues discussed below, by

order entered July 26, 2017.[4]  Respondent's motion for summary

---

[4]Petitioner's first supplement to opposition to motion for summary judgment filed on May 20, 2017, belatedly asserted that the Court shammed Warwick Trading, LLC, and Sugarloaf Fund, LLC, in previous opinions.  Therefore, when addressing the same years at issue and almost identical transactions, the sham partnerships here, according to petitioner, established "a simple agency relationship among the members.  Subchapter K does not apply to mere agency relationships.  Sec. 761(a).  Since the partnership[s] never existed the disguised sale rules do not apply.  Each trading company and main trust takes its own basis from [Lojas] Arapua[, S.A.] or Globex [Utilidades, S.A.] by carryover under Section 721 [sic 723] or Section 1015."  The Court disagrees with petitioner that the partnerships may now recharacterize their transactions for Federal income tax purposes as mere agent-principal transactions to reflect the substance rather than the form of the transactions.  See Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 149 (1974).

Even if the partnerships could change the chosen form of their transactions, they have failed to establish a tax basis for Federal income tax purposes in the charged-off consumer receivables and which receivables were charged off.  Tigers

(continued...)

**[*4]** judgment with respect to the section 6662 penalties was denied because

---

[4](...continued)
Eye Trading, LLC, v. Commissioner, 138 T.C. 67, 148 (2012), aff'd in part, rev'd in part on other grounds sub nom. Logan Trust v. Commissioner, 616 F. App'x 426 (D.C. Cir. 2015), confirms that an agency "is not an entity (i.e., it has no legal identity apart from the separate identities of its participants)." However, it goes on to state:

> [B]ecause Tigers Eye filed a partnership return * * *, that return must be treated as if it were filed by an entity. See sec. 301.6233-1T(c), Temporary Proced. & Admin. Regs. * * *; see also sec. 301.6233-1(b), Proced. & Admin. Regs. * * * [W]e could ask what were the entity items of Tigers Eye, as agent. It would seem to make no difference whether we address the agency as a hypothetical entity, acting through Tigers Eye, or address Tigers Eye as an entity in its own right, acting as agent for the trusts. * * * [W]e shall proceed as if Tigers Eye, in its own right, is the relevant entity.

> * * * * * * *

> [B]ecause it purchased the property as agent of the trusts, it--rather than the trusts--had the information necessary to determine what property it had purchased for each trust and how much of each trust's money it had expended on those purchases. Those were determinations that Tigers Eye had to make for purposes of its books and records in order to furnish information to the trusts. If we consider Tigers Eye the trusts' agent obligated to make those determinations, Tigers Eye's determination of the costs of the property it purchased for the trusts would be an entity item by analogy to section 301.6231(a)(3)-1(c)(3)(iii), Proced. & Admin. Regs. (adjusted basis to the partnership of distributed property is a partnership item). Because we have jurisdiction to determine entity items, see sec. 6226(f), we have jurisdiction to determine the costs of the currency and the shares, which * * * establishes the trusts' bases in those properties.

Id. at 148-149.

**[*5]** respondent had, at that time, not yet conclusively established that the IRS had complied fully with the requirements of section 6751(b)(1). That section generally requires the personal approval "(in writing) by the immediate supervisor of the individual making such determination or such higher level official as the Secretary may designate" before a penalty shall be assessed. See Chai v. Commissioner, 851 F.3d 190 (2d Cir. 2017), vacating, remanding, aff'g in part, rev'g in part T.C. Memo. 2015-42; Graev v. Commissioner, 149 T.C. __ (Dec. 20, 2017), supplementing 147 T.C. 460 (2016).

Respondent's motion for summary judgment in Marlin at docket No. 6268-08 was held in abeyance and then denied. The Court took these actions because of the apparent presence of some different DAD transactions not considered in Superior Trading, and to afford the primary investor in Marlin, Mashud Sarshar Sars,[5] the maximum opportunity to elect to participate in the litigation, which has been conducted by the promoters of the DAD transactions. Consequently, remaining for resolution are the following three issues: (1) whether Marlin may deduct, pursuant to section 166, allegedly bad debts arising from Brazilian consumer receivables of $4,850,000 for 2004; (2) whether Derringer

[5]Mr. Sars' ownership of Marlin was a result of his apparent ownership of all, or almost all, of three other passthrough Federal tax entities, two limited liability companies, and a subchapter S corporation.

**[*6]** may amortize expenses of $14 and $400 for 2003 and 2004, respectively, and deduct other costs of $348 stemming from its DAD transactions for 2004, and similarly whether Marlin may amortize expenses of $174 and deduct collection expenses of $150 stemming from its DAD transactions for 2004; and (3) whether Derringer and/or Marlin is subject to the imposition of accuracy-related penalties pursuant to section 6662, for Derringer's 2003 and/or 2004 taxable year(s) and for Marlin's 2004 taxable year because of an underpayment attributable to a substantial understatement of income tax, a gross valuation misstatement and/or negligence, or disregard of rules and regulations.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulations of facts, with the accompanying exhibits, are incorporated herein.

I.      Objections to Stipulations and Referenced Attached Exhibits

Petitioner has made various objections to stipulation paragraphs. These objections are overruled except as to paragraph 12 of the first stipulation of facts and paragraphs 66, 71, 82, and 108 of the joint fourth supplemental stipulation of facts. The objections to these paragraphs and the specifically referenced exhibits are sustained, and those stipulations and referenced exhibits are hereby struck.

**[*7]** Jetstream's objections are mostly hearsay and relevancy objections. Those of Marlin made by Monticello Shrub Fund, LLC (Monticello), and Leila Verde are generally hearsay, best evidence, self-serving, and "assertion (question) calls for a conclusion." The relevancy bar of rule 401 of the Federal Rules of Evidence is a low one, requiring that the evidence only increase the likelihood that a fact of consequence is true or false. This is particularly true where, as in these cases, the focus of our inquiry goes to intent, substance versus form, and the question of sham. Other than the few exceptions noted above, which in some cases indicated a true dispute as to the stated fact, we find the objections unjustified, and we overrule them. Petitioner has not objected, pursuant to rule 403 of the Federal Rules of Evidence, on grounds that the danger of unfair prejudice, confusions of issues, or accumulative evidence substantially exceeds the probative value of any stipulation, and petitioner's relevancy objections are not sound.

Rule 91(a) requires the parties to comprehensively stipulate "all facts, all documents and papers or contents or aspects thereof, and all evidence which fairly should not be in dispute", subject to any noted objections for relevancy. Petitioner's objections to the admission of the evidence, pursuant to rule 1002 of the Federal Rules of Evidence, are unjustified here. Documents referred to in these stipulations and included in the attached exhibits were not read out loud in

[*8] open court, there was no jury, and the documents are photocopies of the originals. Rule 1003 of the Federal Rules of Evidence permits the use of photocopies, and the parties have acknowledged in the stipulations that the documents in the exhibits to the stipulations are "duplicates to the originals as defined in Rule 1001(4) Fed. R. Evid." Such "documents described * * * and attached * * * as exhibits [to the stipulations] are considered authentic documents." We further note that respondent has challenged many of the transactions at issue here as shams and does not seek to introduce a number of the documents objected to for the truth of what they assert. Rather, respondent seeks to show that the purported transactions did not in fact occur nor were they intended to be implemented as represented. Rule 801(a) through (c) of the Federal Rules of Evidence defines hearsay as an out of court statement offered to prove the truth of the matter asserted. Consequently, those documents are not hearsay.

Participating partner Leila Verde's "self-serving and the assertion (question) calls for a conclusion" objections do not reference any specific rule of the Federal Rules of Evidence and are ambiguous and confusing in this context. If they relate to rules 602 and 701 through 704, they are without merit. The stipulated statements are admitted to be true, and the exhibits are accurate copies of documents in and/or related to the transactions at issue. The Court has found them

**[*9]** to be helpful in determining the facts when considered in the context of all the other evidence in these cases. Rules concerning opinion testimony under rules 701 through 704 of the Federal Rules of Evidence and this Court's Rule 143 have not been abused here.

We further address participating partner Leila Verde's objections for relevancy or materiality against the admission of any "post 2003 exhibits". As noted above, the relevancy and materiality bar of rule 401 of the Federal Rules of Evidence is a low one, and this Court has allowed the admission of evidence relating to years after those before the Court on many occasions. See, e.g., Estate of Gilford v. Commissioner, 88 T.C. 38, 53-54 (1987) (holding that post-valuation-date documents were admissible as evidence in support of a higher valuation of a taxpayer's stock); Polidori v. Commissioner, T.C. Memo. 1996-514 (holding that when determining whether the taxpayer fraudulently underreported his income, the taxpayer's conviction for filing a false individual income tax return for one year after those before the court was admissible because the taxpayer's tax evasion scheme continued in succeeding years); Jessup v. Commissioner, T.C. Memo. 1977-289, 36 T.C.M. (CCH) 1145, 1146 n.1 (holding that in determining whether a taxpayer was in an extensive and continuous trade or

**[*10]** business, his financial documents relating to years after those before the Court were admissible).

Accordingly, Leila Verde's objections for relevancy with respect to the admission of all post-2003 documents are meritless.  Again, there is a failure to show that the probative value is substantially outweighed by the dangers of unfair prejudice, confusing the issues, wasting time, or needless presentation of cumulative evidence as required by rule 403 of the Federal Rules of Evidence, to exclude otherwise relevant evidence.

II.     Prior Cases

As previously noted, in Superior Trading, LLC v. Commissioner, 137 T.C. at 73-79, and Kenna Trading, LLC v. Commissioner, 143 T.C. at 327-350, some of the issues decided were identical or extremely similar to the facts or the law being litigated in the current proceedings.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Estate of Reis v. Commissioner, 87 T.C. 1016, 1027 (1986).  We note that our decision in Superior Trading is now final within the meaning of section 7481.

**[*11]** III.    <u>Specific Facts Similar or Identical to Those in the Superior Trading and/or Kenna Trading Cases</u>

We found the following facts in <u>Superior Trading</u> to be relevant, and on the basis of the testimony, pleadings, filings, stipulations, and attached exhibits in the instant cases, we find the same or similar facts to have existed in the instant cases. We briefly summarize them here for context. Warwick Trading, LLC (Warwick), was a limited liability company organized on December 17, 2001, under the laws of the State of Illinois by John E. Rogers. On May 7, 2003, Warwick entered into a so-called contribution agreement with Lojas Arapua, S.A. (Arapua), a Brazilian retailer, under which Arapua transferred certain Brazilian consumer receivables (Arapua receivables) to Warwick in exchange for a 99% interest in Warwick. <u>Cf.</u> <u>Superior Trading, LLC v. Commissioner</u>, 137 T.C. at 73. Shortly after transferring its receivables, Arapua was redeemed out of its partnership interest in Warwick. <u>Id.</u> at 77.

At different times during the latter half of 2003 and the first three quarters of 2004, Warwick, in turn, claimed to have contributed varying portions of the Arapua receivables it acquired in exchange for a 99% membership interest in different limited liability companies (trading companies). These trading companies included Derringer and Marlin in addition to those which were parties

[*12] in Superior Trading. Id. at 73-74. Individual U.S. investors acquired membership interests in these trading companies through yet another set of Illinois limited liability companies (holding companies), including Leila Verde and Monticello. Id. at 74. To accomplish this, Warwick contributed virtually all of its membership interests in each given trading company to the corresponding holding company. Id. These trading companies then sold, exchanged, or otherwise liquidated the Arapua receivables for the receivables' fair market value, which was a small fraction of their face value. Id. at 78.

Asserting that they had inherited a carryover tax basis in the Arapua receivables under section 723, the trading companies then claimed deductions in the amount of the excess of their asserted tax bases over the receivables' fair market value. Id. As a result, during 2003 and 2004 each of the trading companies wrote off almost the entire claimed tax basis in its share of the Arapua receivables and claimed the resulting deductions. Id. at 74.

Respondent issued FPAAs to Warwick and the trading companies, disallowing the trading companies' deductions for both 2003 and 2004. Id. In Superior Trading we consolidated and decided the partnership-level cases of 14 of these trading companies, along with Warwick. Id. at 70 n.1. During the years at issue there, Jetstream, a company originally formed under the laws of the British

[*13] Virgin Islands, was the managing member of Warwick, each of the 14 trading companies, and the various holding companies. Id. at 74. Mr. Rogers was Jetstream's sole owner and, with John J. Gabel, was one of its two directors. Id. at 92.

It appears that before Marlin was organized and funded,[6] all or almost all of the Arapua receivables may have already been contributed to other trading companies by Warwick. Thus, to cover any dollar amount shortage of allegedly contributed Arapua receivables, Warwick substituted consumer receivables allegedly contributed to Warwick or Sugarloaf Fund, LLC (Sugarloaf), a new entity, by Globex Utilidades, S.A. (Globex), in July 2004.[7] Cf. Kenna Trading,

---

[6]Marlin was organized in 2003 as a limited liability company and was funded pursuant to a contribution agreement with Warwick as of December 19, 2003. Pursuant to the contribution agreement, Marlin was funded with a "Portfolio of Receivables" described on the Exhibit A to the contribution agreement. Exhibit A is a blank page. Importantly, as of December 31, 2003, Warwick held only Arapua receivables. It was not until July 2004 that Warwick's subsequent substitute entity, Sugarloaf, acquired Globex consumer receivables.

[7]During this period Warwick and/or Sugarloaf was experiencing book-keeping problems with the amount of their Brazilian receivables records, which may have led to some transactional discrepancies necessitating the substitution of Globex consumer receivables for Arapua consumer receivables, if in fact the correct real amount of consumer receivables was ever transferred.

The Marlin petition implies at paragraphs 5, kk, bbb, ccc, ddd, and eee, that the allegedly contributed receivables to Warwick were from Arapua, but respondent has acknowledged receiving documents (including collection records)

(continued...)

**[\*14]** <u>LLC v. Commissioner</u>, 143 T.C. at 328. If true, it is as yet unexplained by petitioner how Warwick acquired the Globex receivables. The apparent presence of Globex consumer receivables also requires us to reference our Opinion in <u>Kenna Trading, LLC v. Commissioner</u>, 143 T.C. at 330-338, as Globex consumer receivables were not involved in <u>Superior Trading</u>. While Globex may not have been completely redeemed out of Warwick or its subsequent substitute entity Sugarloaf, a Delaware limited liability company, within two years of the claimed consumer receivable contributions (treatment as a sale rather than a contribution), the result would be the same on the basis of all of the facts and evidence even without a sale presumption in the instant cases. <u>Id.</u> at 329, 351-353. We reach the same conclusion in the <u>Marlin</u> case.

OPINION

I.    <u>Deductions Relating to the Arapua Receivables</u>

In <u>Superior Trading</u> and <u>Kenna Trading</u> we held that neither Arapua nor Globex ever formed a bona fide partnership with Jetstream, Warwick, or Sugarloaf, nor did Arapua ever make a bona fide contribution of the Arapua receivables to Warwick, nor did Globex ever make a bona fide contribution of the

---

[7](...continued)
indicating at least some of the contributed consumer receivables came from Globex. <u>See</u> Respondent's pretrial memorandum at 4 n.4, dated August 2, 2017.

[*15] Globex receivables to Warwick and/or Sugarloaf. Superior Trading, LLC v. Commissioner, 137 T.C. at 81-83; Kenna Trading, LLC v. Commissioner, 143 T.C. at 351-353. We found that Jetstream and Arapua did not intend to join together as partners in the conduct of a business. Instead Jetstream, Warwick, and Sugarloaf looked to the Arapua and Globex receivables for their built-in losses, while Arapua and Globex wanted to dispose of them in order to more quickly derive cash from them. See Superior Trading, LLC v. Commissioner, 137 T.C. at 81-83; Kenna Trading, LLC v. Commissioner, 143 T.C. at 351-353. In short, the so-called partnerships formed between Arapua and Jetstream, and/or Globex and Jetstream, were not bona fide partnerships for Federal income tax purposes as they lacked a common intent to collectively pursue a joint business. See Commissioner v. Culbertson, 337 U.S. 733, 741-742 (1949); Superior Trading, LLC v. Commissioner, 728 F.3d at 680; Kenna Trading, LLC v. Commissioner, 143 T.C. at 351-353.

Both of the present cases, while involving trading companies different from the 15 trading companies at issue in Superior Trading and the many more at issue in Kenna Trading, involve transactions among Arapua, and/or Globex, Jetstream, and Warwick similar to those we analyzed in Superior Trading and Kenna Trading. Petitioner has not adduced any credible evidence challenging our

[*16] conclusions in Superior Trading and Kenna Trading that neither Arapua and/or Globex formed a bona fide business partnership with Jetstream nor made a bona fide contribution of receivables to Warwick and/or Sugarloaf. Accordingly, we reiterate those conclusions here.

Mr. Rogers asserted again, as he had in both of the former cases, that he and Warwick intended to make a profit from anticipated currency exchange rates resulting from a falling U.S. dollar and an appreciating Brazilian currency (real) as well as from consumer receivable collections. He acknowledges, however, that no investor has ever received any money back from these investments. He has attributed this, without persuasive credible evidence, to theft and bad management by the investment entities' collection agents, Multicred Investments Limited and/or MultiCred Investimentos Limitada.

No doubt any incidental profit from the exchange rate and/or consumer receivables collections would have been welcomed as fortuitous "icing on the cake". But the primary objective and the driving purpose for these transactions, as in Superior Trading and Kenna Trading, were achieving Federal income tax loss deductions. See Superior Trading, LLC v. Commissioner, 728 F.3d at 680. Even as losses mounted Mr. Rogers continued to sell interests in trading companies and, after 2004, in trusts to investors, and the entities continued to write off the

**[\*17]** consumer receivables claiming the resulting manufactured built-in section 166 bad debts. These resulted in claimed passthrough losses for the investors.

As an alternative holding in Superior Trading and Kenna Trading we concluded that because Arapua received cash for its interest in Warwick within a year after entering into the contribution agreement, the contribution may be recharacterized as a disguised sale under section 707(a)(2)(B). See Superior Trading, LLC v. Commissioner, 137 T.C. at 83; Kenna Trading, LLC v. Commissioner, 143 T.C. at 353-355. Under section 1.707-3(c)(1), Income Tax Regs., if a partner transfers property to a partnership and within two years thereafter the partnership transfers money or other consideration to that partner, the partner's transfer is presumed to be a sale of the property to the partnership. We held in Superior Trading and Kenna Trading that because no evidence was provided to rebut that presumption, the transactions between Arapua and/or Globex and Warwick constituted sales under section 707(a)(2)(B). See Superior Trading, LLC v. Commissioner, 137 T.C. at 83; Kenna Trading, LLC v. Commissioner, 143 T.C. at 353-355.

In the instant cases the evidence and record indicate the same results. Petitioner has adduced insufficient credible evidence and presented no persuasive arguments to justify reconsidering the conclusions we reached in Superior Trading

[*18] and Kenna Trading.  Therefore, we reiterate as an alternative holding that the transactions between Arapua and/or Globex and Warwick constituted sales rather than contributions.

Additionally as a further holding in Superior Trading and Kenna Trading, we invoked the step transaction doctrine and collapsed the many steps in the series of transactions between Arapua and/or Globex, Jetstream, and Warwick and/or Sugarloaf.  See Superior Trading, LLC v. Commissioner, 137 T.C. at 87-91; Kenna Trading, LLC v. Commissioner, 143 T.C. at 355-357.  We determined that the transactions between Arapua and Warwick could certainly meet the "end result test", which focuses on the parties' subjective intent at the time of structuring the transaction.  Superior Trading, LLC v. Commissioner, 137 T.C. at 89-90; Kenna Trading, LLC v. Commissioner, 143 T.C. at 356-357.  The Court arrived at this conclusion by pointing out that tax benefits were the primary inducement for individual U.S. investors to participate in the scheme, and obtaining those tax benefits "required the carefully choreographed entry and exit of Arapua" and Globex from the outset.  Superior Trading, LLC v. Commissioner, 137 T.C. at 90.  We concluded therefore that there must have been a prearranged plan to reap those tax benefits.  Id. at 89-90; Kenna Trading, LLC v. Commissioner, 143 T.C. at 356-357.

**[\*19]** Moreover, we held in <u>Superior Trading</u> and <u>Kenna Trading</u> that the transactions between Arapua and/or Globex and Warwick and/or Sugarloaf could also pass the interdependence test for invoking the step transaction doctrine. <u>See</u> <u>Superior Trading, LLC v. Commissioner</u>, 137 T.C. at 90; <u>Kenna Trading, LLC v. Commissioner</u>, 143 T.C. at 356-358. This test focuses on whether the intervening steps are so interdependent that the legal relationships created by one step would have been fruitless without completion of the later series of steps. <u>See</u> <u>Penrod v. Commissioner</u>, 88 T.C. 1415, 1428-1430 (1987).

The Court concluded from the facts in <u>Superior Trading</u> and <u>Kenna Trading</u> that an outright sale of the Arapua and/or Globex receivables, rather than a contribution of the Arapua and/or Globex receivables, would have been just as effective in transferring title and facilitating their subsequent servicing. <u>Superior Trading, LLC v. Commissioner</u>, 137 T.C. at 90; <u>Kenna Trading, LLC v. Commissioner</u>, 143 T.C. at 357. We ultimately held that Arapua's entry to and exit from Warwick and Globex's entry to and ultimate exit from Warwick and/or Sugarloaf served no economic or business purpose other than obtaining tax benefits. <u>Superior Trading, LLC v. Commissioner</u>, 137 T.C. at 89-90; <u>Kenna Trading, LLC v. Commissioner</u>, 143 T.C. at 356-358.

[*20] Because both tests were satisfied, either of which could suffice independently to invoke the step transaction doctrine, we collapsed the series of transactions into just one: the sale of the Arapua and/or Globex receivables to Warwick and/or Sugarloaf. Superior Trading, LLC v. Commissioner, 137 T.C. at 90-91; Kenna Trading, LLC v. Commissioner, 143 T.C. at 357-358.

A similar analysis and conclusion apply here. Petitioner produced insufficient, if any, credible and/or new evidence regarding the transactions between Arapua and/or Globex and Warwick that would cause us to reconsider our decision to invoke the step transaction doctrine as we did in Superior Trading and Kenna Trading.

In sum, we concluded in Superior Trading and Kenna Trading that three independent reasons, viz, no bona fide partnership and contribution, a disguised sale, and the step transaction doctrine, lead us to the same result: Warwick's and/or Sugarloaf's basis in the Arapua and/or Globex receivables should be a cost basis rather than a carryover basis. Superior Trading, LLC v. Commissioner, 137 T.C. at 91; Kenna Trading, LLC v. Commissioner, 143 T.C. at 357. Neither Warwick nor any of the trading companies whose cases we decided in Superior Trading or Kenna Trading were able to credibly substantiate the amounts of payments Warwick made to Arapua and/or Globex for the purchased consumer

[*21] receivables. Superior Trading, LLC v. Commissioner, 137 T.C. at 91; Kenna Trading, LLC v. Commissioner, 143 T.C. at 357-358.

We imputed a zero cost basis to those receivables in the hands of Warwick and/or Sugarloaf, and consequently, a zero cost basis for each of the trading companies at issue there. Superior Trading, LLC v. Commissioner, 137 T.C. at 91; Kenna Trading, LLC v. Commissioner, 143 T.C. at 358.

In the instant cases petitioner also failed to adduce adequate evidence to substantiate the amount of Warwick's and/or Sugarloaf's payments for the Arapua and/or Globex consumer receivables. Therefore, the partnerships' tax bases in the Arapua and/or Globex receivables should be zero as well. With a zero cost basis, the consumer receivables at issue here cannot generate any of Marlin's claimed $4,850,000 section 166 bad debt DAD deduction; that deduction is hereby disallowed.

The Court notes also that the Court of Appeals for the Seventh Circuit in Superior Trading considered 15 transactions similar to the partnership cases at issue here. It held that "[t]here is not even a colorable basis for the tax shelter that * * * [Mr. Rogers] created and the * * * [petitioner parties] implemented." Superior Trading, LLC v. Commissioner, 728 F.3d at 680-682. This Court in Kenna Trading similarly held, as did the Court of Appeals for the Seventh Circuit,

[*22] that Warwick and Sugarloaf, respectively, were sham partnerships not entitled to the benefits of Federal income tax law. Kenna Trading, LLC v. Commissioner, 143 T.C. at 353-359. We conclude this holding is also apropos to Derringer and Marlin for purposes of these cases.

II.     Expense Deductions

Marlin deducted, on its 2004 Form 1065, U.S. Return of Partnership Income, collection expenses of $150 in connection with its DAD transactions and consumer receivables collection efforts. It also deducted $174 of amortization expenses resulting from DAD-related activities for 2004. We addressed similar issues in Kenna Trading. Id. at 365. We noted there that deductions are "a matter of legislative grace" and that taxpayers have the responsibility to identify, substantiate, and establish that they are entitled to each and every claimed deduction. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); Welch v. Helvering, 290 U.S. 111, 115 (1933); Roberts v. Commissioner, 62 T.C. 834, 836-837 (1974).

Section 162 permits taxpayers to deduct all ordinary and necessary partnership business expenses paid or incurred in connection with a trade or business. Sections 195(b) and 709(b) permit taxpayers to elect to amortize certain startup and partnership organizational expenses. But these sections do not include

**[\*23]** abusive tax shelter expenditures or sham partnerships' startup and organizational expenses which are not legitimate ordinary or necessary business expenses. Hewlett-Packard Co. v. Commissioner, 875 F.3d 494, 500 (9th Cir. 2017), aff'g T.C. Memo. 2012-135; Wells Fargo & Co. v. United States, 641 F.3d 1319, 1330 (Fed. Cir. 2011); Gerdau Macsteel, Inc. v. Commissioner, 139 T.C. 67, 182 (2012). Marlin's and Derringer's activities during 2003 and/or 2004 consist only of abusive DAD tax-shelter-related efforts and expenditures; hence they created no allowable deductions for the partnerships. See Southgate Master Fund, LLC, ex rel. Montgomery Capital Advisors, LLC v. United States, 659 F.3d 466, 483 n.53 (5th Cir. 2011); sec. 301.7701-1(a)(1), Proced. & Admin. Regs.

Petitioner also failed to satisfactorily carry its burden of identifying, substantiating, and establishing that Derringer and/or Marlin incurred and paid the claimed expenses and/or were entitled to deduct the $14, $400, and $174, respectively, of amortization expenses, for ordinary or necessary business purposes. For these reasons, we conclude that respondent appropriately disallowed Derringer's claimed $14, $400, and $348 deductions for 2003 and 2004, respectively, and Marlin's claimed $150 and $174 deductions for 2004.

**[*24]** III.     <u>Accuracy-Related Penalties</u>

Respondent determined section 6662 accuracy-related penalties against both partnerships, including a section 6662(a) 20% accuracy-related penalty and the section 6662(h) 40% gross valuation misstatement penalty.  A gross valuation misstatement arises if the adjusted basis of any property claimed on any return of tax imposed is 400% or more of the amount determined to be correct.  Sec. 6662(h)(2)(A)(i).  Whereas here we determined that the adjusted bases of the consumer receivables were zero, the amounts claimed as bad debt deductions result in gross valuation misstatements.  <u>See</u> sec. 1.6662-5(g), Income Tax Regs.  Consequently, there are gross valuation misstatements on Derringer's 2003 and 2004 income tax returns and Marlin's 2004 income tax return.  Section 6751(b)(1) requires, as a prerequisite for the assessment of an accuracy-related penalty, the personal written approval of the immediate supervisor of the individual who had made "the initial determination of such assessment".  <u>Chai v. Commissioner</u>, 851 F.3d at 216; <u>see also</u> <u>Graev v. Commissioner</u>, 149 T.C. __ (Dec. 20, 2017).

As to Marlin, respondent's counsel and Mr. Rogers, at the trial, orally represented to the Court that respondent had established that section 6751(b)(1) had been complied with in all material respects and was no longer an issue in the <u>Marlin</u> case.  As to Derringer, respondent introduced evidence at the trial showing

**[\*25]** that the requirement of section 6751(b)(1) has been met.  Petitioner has not presented any evidence indicating the requirements of section 6751(b)(1) were not met and fully fulfilled in these cases.  Consequently, we conclude that respondent met all requirements imposed upon him by section 6751(b)(1) to impose the applicable section 6662 penalties.  See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

We also conclude that the 20% section 6662(a) accuracy-related penalty applies to the portion of the underpayment attributable to Marlin's disallowed $150 collection expense and $174 amortization expense deductions for 2004.  The section 6662(a) penalty applies to the portion of an underpayment due to negligence or disregard of rules or regulations.  Marlin did not keep all records required by section 6001 and negligently claimed abusive tax-shelter expenses.  See sec. 1.6001-1(a), Income Tax Regs.  Similarly, the section 6662 accuracy-related penalty is 20% for Derringer's portion of the deficiencies attributable to the $14 and $400 of claimed amortization expenses for 2003 and 2004, respectively, and the $348 other costs deduction for 2004.  Respondent has met any statutory burden imposed by section 7491(c);[8] consequently, the accuracy-

---

[8]We note that it is not yet settled whether sec. 7491(c) imposes the initial burden of production on the Commissioner where a case is commenced by the
(continued...)

[*26] related penalty is 40% as to the portion of the deficiencies resulted from the $3,395,000 and $4,850,000 bad debt deductions, respectively, in both <u>Derringer</u> and <u>Marlin</u>.

With respondent's threshold showing, the burdens shift to petitioner who, for the partnerships to avoid penalties, must establish that they acted with reasonable cause and in good faith as to the claimed valuation and expense deductions. See <u>Higbee v. Commissioner</u>, 116 T.C. at 446. If we were to find that Derringer and Marlin acted with reasonable cause and in good faith, we would not sustain the accuracy-related penalties. See sec. 6664(c)(1). We make this determination at the partnership level, taking into account the state of mind of the general partner. See <u>New Millennium Trading, LLC v. Commissioner</u>, 131 T.C. 275 (2008). Mr. Rogers, the relevant person here, as the controlling person and managing member of Jetstream, was a well-educated, sophisticated, and tax-savvy individual and attorney. See <u>Superior Trading, LLC v. Commissioner</u>, 137 T.C. at 75, where we also noted the same. Therefore, Mr. Rogers' subjective intent is the focus here since he was the sole owner and a director of Jetstream and the tax

---

[8](...continued) filing of a petition under sec. 6226. <u>Green Gas Del. Statutory Tr. v. Commissioner</u>, 147 T.C. 1, 74 (2016). Sec. 7491(c) provides that the Secretary shall have the burden of production with respect to the liability of any individual for a penalty or addition to tax.

**[\*27]** matters partner of Warwick, Sugarloaf, Derringer, and Marlin during 2003 and 2004.  Superior Trading, LLC v. Commissioner, 137 T.C. at 92; Kenna Trading, LLC v. Commissioner, 143 T.C. at 329.  In Superior Trading, LLC v. Commissioner, 137 T.C. at 92, we found that "[t]here ha[d] been no showing of reasonable cause or good faith on [Mr.] Rogers' part in conceptualizing, designing, and executing the transactions."  In these cases too, petitioner has not adduced sufficient, if any, credible evidence of reasonable cause or good faith by Mr. Rogers.

Petitioner has not demonstrated that the partnerships qualify for the exception to the penalty provided by section 6664(c) for reasonable cause.  See United States v. Woods, 571 U.S. 31, 40 (2013); Superior Trading, LLC v. Commissioner, 728 F.3d at 682; Neonatology Assocs., P.A. v. Commissioner, 115 T.C. 43, 99 (2000) (setting forth a three-prong test to determine whether a taxpayer's reliance on tax professionals may be reasonable cause), aff'd, 299 F.3d 221 (3d Cir. 2002).

The Court has considered all of the parties' arguments and, to the extent not discussed above, concludes that those arguments are irrelevant, moot, or without merit.

[*28] To reflect the foregoing,

<u>Decisions will be entered for</u>

<u>respondent</u>.